IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMANDA CULBERTSON and | § | |
| JORGE WONG, | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 4:12-CV-3644- |
| V. | § | |
| | § | |
| PAT LYKOS, individually and in her official | § | |
| capacity as Harris County District Attorney; | § | |
| RACHEL PALMER, individually and in her | § | JURY TRIAL DEMANDED |
| official capacity as Harris County Assistant | § | |
| District Attorney, and HARRIS COUNTY, | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Amanda Culbertson and Jorge Wong ("Plaintiffs"), Plaintiffs in the above styled and numbered cause, and file this, their Original Complaint, complaining of Pat Lykos, individually and in her official capacity as District Attorney, Rachel Palmer, individually and in her official capacity as Assistant District Attorney, and Harris County (collectively, "Defendants"), and for causes of action would show as follows:

## I.
## INTRODUCTION

1.     This case is brought by two citizen whistleblowers for unlawful retaliation in violation of their Constitutional rights.  Amanda Culbertson and Jorge Wong exercised their First Amendment rights in speaking out against problems with the Crime Lab at the Houston Police Department and by attempting to preserve the integrity of the Crime Lab.  In retaliation for their protected speech and association, Harris County, Pat Lykos (District Attorney for Harris County), and Rachel Palmer (Assistant District Attorney for Harris County) engaged in a

campaign to silence and harm Culbertson and Wong, that included efforts to damage their reputations and livelihood. The Defendants' actions violated Culbertson and Wong's Constitutional rights and tortiously interfered with Culbertson and Wong's employment. This lawsuit seeks relief for the harm caused by Defendants' unlawful actions.

2.      This action seeks declaratory relief, injunctive relief, actual damages, compensatory damages, punitive damages, attorneys' fees, taxable costs of court, pre-judgment and post-judgment interest, and equitable relief as allowed by law for Defendants' violations of the First Amendment to the United States Constitution, made actionable by 42 U.S.C. § 1983.

3.      This action also seeks actual damages, compensatory damages, punitive damages, taxable costs of court, and pre-judgment and post-judgment interest as allowed by law, for the Individual Defendants' tortious interference with a contract.

4.      Plaintiffs demand a jury on all issues triable to a jury.

## II.
## PARTIES

5.      Plaintiff Amanda Culbertson ("Culbertson") is an individual who resides in Houston, Harris County, Texas.

6.      Plaintiff Jorge Wong ("Wong") is an individual who resides in Houston, Harris County, Texas.

7.      Defendant Pat Lykos ("Lykos") is a resident of Texas and the Harris County District Attorney. Lykos is sued in both her individual capacity and in her official capacity as the Harris County District Attorney. Service of the Summons and this Complaint may be made by serving Lykos in person at her place of work, the Harris County District Attorney's Office, 1201 Franklin, Houston, TX 77002.

8.      Defendant Rachel Palmer ("Palmer") is a resident of Texas and at all times relevant to this action served as a Harris County Assistant District Attorney ("ADA").  Palmer is sued in both her individual capacity and in her official capacity as a Harris County Assistant District Attorney.  Service of the Summons and this Complaint may be made by serving her in person at her place of work, the Harris County District Attorney's Office, 1201 Franklin, Houston, TX 77002.

9.      Defendant Harris County is a political subdivision of the State of Texas.  Service of the Summons and this Complaint may be made on Harris County by serving its County Judge, Ed Emmett, at his place of work, 1001 Preston, Suite 911, Houston, Texas 77002.

### III.
### JURISDICTION AND VENUE

10.      This Court has jurisdiction over all claims in this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

11.      Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

### IV.
### FACTS

12.      Plaintiff Amanda Culbertson began working for the Houston Police Department ("HPD") in or around December 2006 as a Criminalist Specialist in HPD's Crime Lab ("Crime Lab").  Part of her job involved blood alcohol testing.  She eventually received certification from the Texas Department of Public Safety ("DPS") to serve as a technical supervisor of HPD's breath alcohol testing program.

3

13.     As a technical supervisor, part of Culbertson's work involved maintaining the instruments used in the Breath Alcohol Testing ("BAT") vans.  The BAT van program began at the end of 2008 and was ramped up in 2009.

14.     In March 2009, Irma Rios, Assistant Director of the Crime Lab, nominated Culbertson for a civilian employee of the year award.

15.     Culbertson and her colleague, Jano Chu, also a technical supervisor, began noticing various issues with the instruments in the BAT vans in 2009, and temperature and electrical issues with the BAT vans in or around the summer of 2009.  Culbertson and Chu were concerned that the issues they noticed with the BAT vans and their instruments could affect the integrity of the breath alcohol tests.  They informed HPD senior police officer Paul Lassalle ("Lassalle"), who implemented and oversaw the BAT van program, of their concerns.  However, the issues with the BAT vans were not resolved.

16.     HPD hired Jorge Wong in 2009 to work as a Criminalist in the Crime Lab, and he later received certification as a technical supervisor as well.

17.     As the temperature and electrical issues continued through 2010 without resolution, Culbertson, Wong, and Chu shared their concerns with HPD Lt. Paul Follis, Lassalle's supervisor.  Again, the issues with the BAT vans were not resolved.

18.     In or around July 2010, Culbertson, Wong, and Chu agreed to suspend a police officer who had run breath tests without first checking the simulator temperature, which had an out of tolerance reading due to the heat.  The Texas Administrative Code required them, as technical supervisors, to take this action.  Captain Carl Driskell ("Driskell"), head of Traffic Enforcement for HPD, was angry about the suspension.  As a result of Captain Driskell's

4

response to their proper actions, Culbertson, Wong, and Chu agreed to notify Captain Driskell prior to suspending a breath test operator in the future.

19.     After again finding that one of the BAT vans was hot, Culbertson, Wong, and Chu drafted a memo stating that they would remove instruments from the BAT vans if they were hot.  They provided this memo to their supervisor, Irma Rios ("Rios"), who emailed it to Captain Driskell, Captain Staney, and Lt. Follis.  Again, the issues with the BAT vans were not resolved.

20.     In or around August 2010, Culbertson, Wong, and Chu sought to have a breath test operator suspended based on her having run a breath test in a BAT van without having checked the simulator temperature, which had an out of tolerance reading.   Captain Driskell convinced them that she should be disciplined departmentally in lieu of suspension in the breath test program.

21.     In or around September 10, 2010, Wong and Chu again discovered that one of the BAT vans was hot.  After consulting with Culbertson, they agreed to remove the instrument as they had stated they would do so in their previous memo to Captain Driskell, Captain Staney, and Lt. Follis.  On or about September 13, 2010, Culbertson, Wong, and Chu drafted an email regarding this issue to Captain Driskell.  Shortly thereafter, Culbertson received a supervisory intervention in part because of her role in an email exchange regarding the issue.  Around the same time, Culbertson was ordered not to talk with the Harris County District Attorney's Office ("HCDAO") directly.  Shortly thereafter, Rios also verbally ordered Culbertson, Wong, and Chu not to suspend breath operators, in contravention of the requirements for technical supervisors under the Texas Administrative Code.

22.     Due to her concerns and the opposition from her supervisors at the Houston

Police Department, Culbertson sought advice from Mack Cowan, the Scientific Director for the Texas DPS Breath Alcohol Testing Program.  He advised her to look up the option of inactivating operators in lieu of suspending operators.  Culbertson, Wong, and Chu decided to utilize inactivation if needed to comply with Rios' order as well as their obligations under the Texas Administrative Code.

23.    In or around November 2010, Culbertson and Wong drafted correspondence to Captain Driskell regarding issues with the uninterruptable power supply in the BAT vans.  At that time, the issues with the BAT vans were still unresolved.

24.    Chu resigned his position with the HPD crime lab at the end of November 2010, effective January 2011, to pursue a law degree.

25.    In or around December 2010, a police officer was inactivated by Culbertson, Wong, and Chu for failure to check the simulator temperature while conducting a test in the BAT van.  In January and February 2011, Culbertson and Wong inactivated two breath test operators, one for losing breath test slips and the other for failing to follow regulations.

26.    In response, Rios verbally ordered Culbertson and Wong not to suspend or inactivate a breath test operator and told them that doing so would result in an insubordination IAD complaint if they did so.  Rios made this order despite Culbertson and Wong's legal obligations under the Texas Administrative Code.

27.    In or around March 2011, local media began covering issues related to the BAT vans, including the integrity of results from the BAT vans.

28.    In March of 2011, due in large part to HPD's failure to rectify problems with the BAT vans and its response to Wong and Culbertson's concerns, Wong resigned from his

employment with HPD.  Shortly thereafter, Wong sought a position as a technical supervisor with Lone Star College ("Lone Star"), which hired him in or around March 2011.  Lone Star College, through an agreement with Harris County, provided the services of three technical supervisors to oversee the Harris County Sheriff's Office ("HCSO") breath alcohol testing program.

29.     Just prior to his last day of employment with HPD and after he had submitted his resignation, Wong met with the HPD Chief of Police, Charles McClelland.  During the meeting, Wong expressed to Chief McClelland some of his concerns with the BAT vans and the HPD Crime Lab.

30.     Around the same time and after he had submitted his resignation, Rios approached Wong to speak to him about Wong's concerns with the HPD crime lab.  In their discussion, Wong reiterated his issues with the HPD Crime Lab, including his issues with the BAT vans.

31.     Shortly after he left employment with HPD, Wong reconsidered his decision to leave HPD, and he contacted Rios about the possibility of returning to his position with HPD. After Rios expressed interest in having him return, Wong revisited the issues he had with the Crime Lab and the BAT vans.  In discussing the possibility of returning to HPD, he asked if the situation (referring to problems with the BAT vans and breath alcohol testing program) would be the same.  When Rios informed him that it was not going to change, Wong decided he could not return to employment with HPD.

32.     On April 15, 2011, Culbertson received an email from Mack Cowan which contained a forwarded email from Rachel Palmer.  Culbertson called Cowan, who told her that

Palmer had asked him to testify at an upcoming suppression hearing regarding the BAT vans and that he had told Palmer that she should speak with Culbertson or Chu because they knew more about the specifics and history of the vans. Culbertson does not recall being contacted by Palmer regarding this hearing.

33.     On or about April 21, 2011, Culbertson removed three instruments from the BAT vans due to excessive heat in the vans. She wrote a memo addressed to Lt. Driskell, provided to Irma Rios and KK Alexander, regarding the removal of the instruments. In the memo, Culbertson explained the reasons for the removal of the instruments and that it was a recurring problem with the BAT vans. She also sent a copy to Cowan. In a meeting on or about April 27, 2011, Rios and Alexander questioned Culbertson as to why she had sent the memo to Cowan.

34.     Culbertson resigned from her position with HPD on May 2, 2011, primarily due to her concerns with the BAT vans and the HPD Crime Lab. Prior to leaving HPD on May 13, 2011, Culbertson received numerous subpoenas to testify on HPD blood and breath alcohol cases. In response, Culbertson emailed Rios to explain why she would continue to testify on HPD blood cases but should not do so for the HPD breath cases, as she would no longer be the custodian of records. Culbertson also verbally informed Rios, who stated that she would let Palmer know. Culbertson spoke with an investigator from the DA's office who told her that Palmer had stated that Culbertson would not tell Palmer who she could and could not subpoena.

35.     Culbertson began working at Lone Star on May 16, 2011 as a technical supervisor and one of the three technical supervisors working on the contract between Lone Star and Harris County.

36.     The Harris County District Attorney's office subpoenaed Culbertson to testify in a

breath alcohol testing case set for trial the week of May 23, 2011.  On May 24, 2011, Culbertson checked in for the case and was directed to the ADA, who did not acknowledge Culbertson's presence.  Culbertson then returned to the courtroom where she was giving testimony in another case, and the ADA was no longer in court when Culbertson returned later.  Upon arriving in court on May 25, 2011, Culbertson explained to the ADA present that Culbertson was no longer the custodian of records for HPD's breath alcohol testing program and that the defense would object based on Rule 803 to her testimony.  When asked by another ADA as to whether she could testify to a breath test slip, Culbertson explained the reasons that she could not do so, in light of the fact that she was no longer the custodian of records.  She did tell the ADAs that she could testify to the monthly inspection records, as she had performed the monthly inspections personally and could recall performing them, and could testify that the instrument worked properly during the inspection she conducted.  However, once Culbertson began her testimony, the ADA asked her if the instrument was working properly the day the defendant took the test.  Culbertson could not answer that.  The defense objected to the admission of the breath test slip, in part for the reason cited by Culbertson in her discussion with the ADAs prior to her testimony.  The jury acquitted the defendant.

37.     On June 3, 2011, Palmer emailed Vicki Amszi ("Amszi"), one of the three technical supervisors at Lone Star, and communicated the DA office's refusal to subpoena Culbertson in HCSO breath alcohol testing cases.  She reiterated this decision in a subsequent email to Amszi dated June 23, 2011.

38.     Palmer wrote a memo dated July 11, 2011 regarding Culbertson to Roger Bridgwater, in part to explain why the DA's office was no longer issuing breath test case

9

subpoenas to Culbertson.  The portion of the memo discussing Culbertson's testimony on May 25, 2011 concludes with the statement: "After this debacle, we realized that she could not be trusted to testify in any breath test."  In the closing paragraph of the memo, Palmer states "Last week, I began hearing rumblings that, in the future, Ms. Culbertson plans to testify for the defense."  Palmer also stated in the memo that she was "gravely concerned about [Culbertson's] ability to testify fairly in cases going forward."

39.     On July 26, 2011, a meeting was held to discuss the renewal of the agreement between Lone Star and Harris County regarding the provision of technical supervisors for the HCSO breath alcohol testing program.  Individuals present at the meeting included representatives from Lone Star, HCSO, and the Harris County Commissioners Court.  On information and belief, a verbal agreement was reached to renew the previous year's agreement with some minor revisions, and the vote for the Commissioners Court to approve the agreement was set for September 13, 2011.

40.     On July 27, 2011, while on a break from testifying in a case in Harris County Criminal Court No. 12, Culbertson was served with a subpoena for State v. Donald Andrews, Cause No. 1682012, to appear in County Court No. 7.  This was for the suppression hearing, which had been reset, that Palmer had contacted Cowan about around April 15, 2011.

41.     After Culbertson finished giving testimony in Criminal Court at Law No. 12, the judge in that court ordered her to go to Criminal Court at Law No. 7 to begin her testimony there.

42.     During the hearing, criminal defense attorney Dane Johnson asked Culbertson questions about issues she had with the BAT vans.  Culbertson testified that a big reason why she and Wong left HPD was because they were not being permitted to maintain the integrity of the

10

BAT vans and the HPD breath testing program.  Culbertson had personal knowledge of Wong's statements regarding the BAT vans and the HPD breath testing program and testified as to Wong's concerns on the basis of personal knowledge.  Culbertson also testified that Wong had spoken to HPD Chief of Police, Charles McClelland.

43.     Palmer commenced her cross-examination of Culbertson, but after a short time, the hearing was recessed.  The following day, July 28, 2011, Palmer resumed her cross-examination of Culbertson.  At one point, Judge Pam Derbyshire stated to Palmer, "You may be unhappy with her conduct, but there is only one thing and one thing only she is here for, which is about the breath test given to this gentleman in Bat Van 5."  During her cross-examination of Culbertson, Palmer acknowledged that Culbertson was a "whistleblower" in regard to HPD.

44.     Wong had also been subpoenaed for the Andrews hearing and was scheduled to testify after Culbertson.   However, at the termination of Palmer's cross-examination of Culbertson and after Wong was called as a witness, Palmer requested a continuance of the hearing and subsequently dropped the charges.

45.     On or about July 31, 2011, Culbertson received a text message from a DWI police officer that included a picture of Culbertson that had been defaced with the addition of devil horns, a beard, and a tail added.  The officer informed Culbertson that the picture had been posted at HPD Central Intox with news clippings.

46.     Shortly after Culbertson's courtroom testimony regarding her and Wong's concerns with the BAT vans and the Crime Lab, Palmer and the Harris County District Attorney's office ("HCDAO") began investigating Culbertson for perjury for retaliatory purposes.  In addition, Culbertson was also told that her certification as a Technical Supervisor

11

was in jeopardy.

47.     Culbertson spoke to Cowan on or about August 8, 2011, at a conference both were attending.  Cowan told her that Jim Leitner with the HCDAO office had sent Cowan a copy of Culbertson's testimony and requested that he review the transcript to offer his opinion as to whether Culbertson had committed perjury.  Cowan reported to Culbertson that he had told Leitner that Cowan saw no perjury in the transcript.  Cowan also told Culbertson that she had angered people at HCDAO.

48.     On information and belief, the HCDAO also instigated the review of Breath Test Technical Supervisor Affidavit DIC-56 forms signed by Culbertson as part of a fruitless and retaliatory effort to acquire evidence with which to charge Culbertson with perjury.  In addition, around this same time, Palmer was telling prosecutors in the HCDAO that Culbertson was not credible.

49.     On or about August 11, 2011, Leitner led a meeting with Culbertson and other members of the HCDAO, to discuss matters raised by Culbertson's testimony.  Culbertson again reiterated her concerns with the BAT vans and also expressed Jorge Wong's concerns as well.

50.     Culbertson was forced to hire an experienced criminal defense attorney to protect herself as the target of the HCDAO's baseless inquiry into whether she had committed perjury. She was specifically warned by lawyers in the community who were privy to the HCDAO's efforts that the HCDAO was after her and that she should hire a lawyer immediately.

51.     On or about August 23, 2011, Culbertson again met with individuals from the HCDAO, including Rachel Palmer, and shared what she had discussed with the manufacturer of the instruments utilized in the BAT vans.

52.     In response to Culbertson's meetings with individuals from the HCDAO, the HCDAO issued two Brady notices to defense attorneys informing them of potentially exculpatory or mitigating evidence based on Culbertson's concerns.

53.     Culbertson was so concerned by the numerous warnings that the HCDAO was after her that she became afraid to leave her house because of the threat that she would be arrested for perjury.

54.     On information and belief, another meeting to discuss the Lone Star contract with Harris County occurred on or about September 1, 2011.  This meeting, not open to the public, included Palmer, as well as representatives from the HCSO and representatives from the Harris County Commissioners Court.  Individuals who attended this meeting were instructed to keep the meeting a secret and not to tell anyone at Lone Star about the meeting.

55.     At this meeting, Palmer and the HCDAO, recommended to representatives of the Commissioners Court that Harris County contract with DPS for breath alcohol testing instead of Lone Star.  Palmer stated that the testimony of Culbertson and Wong could not be trusted.  In addition to this secret meeting, numerous efforts were made by Lykos, Palmer, and the HCDAO to discredit Culbertson and Wong to representatives of the Commissioners Court so that the County contract between Lone Star would be given to DPS rather than Lone Star.  These efforts included private conversations with representatives from the Commissioners Court regarding Culbertson and Wong.  The purpose of Lykos, Palmer, and the HCDAO's efforts was to harm, discredit, and end the employment of Culbertson and Wong, in part by transferring the contract from Lone Star to DPS (as Culbertson and Wong were two of the three technical supervisors under the contract).  Lone Star had contracted with the County in this capacity for approximately

thirty years.

56.     On or about September 13, 2011, at a public meeting of the Commissioners Court, several defense attorneys expressed their concerns regarding the retaliatory effort by the HCDAO to end the long-standing contractual relationship between Lone Star and Harris County due to whistleblowing.  These attorneys also offered supportive reasons for the retention of the Lone Star agreement, including the cost savings to the county because of the availability of state reimbursements available under that agreement, and concerns regarding the quality of testing services that DPS would provide.  One of the attorneys spoke of how he had relied on Culbertson, Wong, and Amszi in his former role as a prosecutor.  One attorney testified that the Harris County Sheriff's Office supported renewal of Lone Star's contract with Harris County.  In response, a Harris County Commissioner stated publicly that he supported the termination of the relationship between the County and Lone Star because he believed Harris County should not work with a scientist that takes an adversarial position to the HCDAO.  Notably, Rachel Palmer and John Barnhill with the HCDAO were also present at this meeting of the Commissioners Court.

57.     On or about September 17, 2011, the Houston Chronicle published an article regarding HPD's knowledge of problems with the BAT van program.  In that article, the Houston Chronicle quoted Culbertson and Wong regarding their concerns with the BAT vans.  In addition, Wong was quoted as stating that if he had been allowed to testify at the hearing on July 28, 2011 where Culbertson testified, his testimony would have been very similar to Culbertson's testimony.

58.     During the last week of September 2011, DPS employees removed breath alcohol

testing instruments and related records from Lone Star's facilities.  On information and belief, they did so because they would be taking over the HCSO breath testing contract from Lone Star. At the same time, Mack Cowan sent an email dated September 30, 2011 stating that DPS had assumed the breath alcohol testing role previously held by Lone Star effective September 28, 2011.  Notably, this email and the removal of the instruments from Lone Star occurred before the Harris County Commissioners Court had even voted on the relevant issue.

59.     As of the end of September 2011, DPS had sent out proficiency samples to other technical supervisors, which had to be completed annually to maintain technical supervisor certification.  They had not sent such samples to Culbertson or Wong.

60.     On or about October 1, 2011, the Houston Chronicle published statements by Amanda Culbertson regarding her concerns about retaliation by the HCDAO.  She stated: "I think they had to make a choice between fixing the problem and silencing me, and it was easier to silence me or anyone else who spoke out."

61.     On October 4, 2011, the Commissioners Court formally approved a budget providing for the transfer of the breath testing contract to DPS from Lone Star, resulting in the end of the employment of Jorge Wong and Amanda Culbertson, the target of Lykos, Palmer, and HCDAO's actions.

62.     Harris County Sheriff's Office spokesman Alan Bernstein stated publicly that it was his office's understanding that the HCDAO had some problems with procedures or testimony provided by the Lone Star College experts.

63.     In or around the fall of 2011, a grand jury began investigating the HPD BAT vans.

64.    Culbertson and Wong's employment with Lone Star terminated at the end of October 2011.

65.    During the course of the grand jury investigation, the grand jury subpoenaed Palmer.  Rather than testify, she invoked her Fifth Amendment right against self-incrimination. Leitner, her supervisor, explained that she would not face consequences at the DA's office for doing so, stating that he would be hard pressed to punish anyone because they exercised their constitutional rights.

66.    In addition, during the grand jury investigation, in an effort of retaliation and intimidation, Lykos directed research into the members of the grand jury and prosecutors conducting the investigation.

67.    Following the conclusion of the grand jury, the grand jury publicly rebuked the actions of the HCDAO in relation to BAT vans.  They also rebuked the HCDAO's investigation of members of the grand jury and members of the Harris County judiciary.

68.    As a result of Defendants' unlawful and tortious conduct, in violation of Plaintiff's constitutional rights, Plaintiffs have suffered tremendous damage.  This damage includes but is not limited to: infringement upon their right to free speech and association guaranteed by the First Amendment including a chilling effect upon and deprivation of those rights, damage to their reputation, damage to character, the loss of their certification as technical supervisors, the loss of their positions with Lone Star, loss of employment opportunities with other employers, loss of earning capacity, lost income and employment benefits, mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life.  In addition, Culbertson was forced to pay to hire an experienced criminal attorney to represent her with

respect to the threat of an indictment for perjury.

**V.**
**CAUSE OF ACTION: Retaliation for Speech and Association Protected by the First Amendment to the United States Constitution**

69.     Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

70.     Plaintiffs exercised their federally protected rights under the First Amendment to the United States Constitution when they engaged in speech and association regarding issues involving matters of public concern: the integrity of HPD's breath alcohol testing program and particularly, though not limited to, HPD's BAT vans.

71.     On information and belief, Defendants Lykos, Palmer, and Harris County, as a matter of custom and policy, acting with deliberate, conscious, and callous indifference to Plaintiffs' First Amendment rights to freedom of speech and association, participated in, led, authorized, tolerated, and/or ratified the illegal misconduct stated herein, including but not limited to the campaign by individuals within the DA's office, including Lykos and Palmer, to: (1) discredit Culbertson and Wong as technical supervisors and harm their reputations, (2) investigate Culbertson for perjury without cause and try to trap her into committing perjury; (3) threaten Culbertson and Wong's licensing as technical supervisors, and (4) lobby representatives of the Commissioners Court to shift the Lone Star agreement to DPS, and, based thereon, the Commissioners Court's decision to shift the Lone Star agreement to DPS.  This conduct was motivated by Plaintiffs' protected speech and association, and proximately caused Plaintiffs the deprivation of their federally protected rights, resulting in injury to them.    Each of these acts was committed by a final policymaker with respect to that action for Harris County, and/or was

17

committed pursuant to an official or *de facto* policy or custom of the Harris County DA's office of retaliation for the exercise of lawful rights and/or pursuant to the DA's failure to adequately train and supervise assistant district attorneys so as to prevent the unlawful retaliatory conduct described herein.

72.     Defendants' actions and omissions were undertaken under color of state law, making the Defendants liable under § 1983.

73.     Plaintiffs' claims under § 1983 are actionable against Lykos and Palmer in their individual capacities, as laws prohibiting retaliation for exercising the First Amendment rights to speak out on, and associate with respect to, matters of public concern have been clearly established for years, and Lykos and Palmer knew or should have known that retaliation for exercising the First Amendment right to speak out on, and associate with respect to, matters of public concern was clearly established and a violation of federal law.  In light of the law clearly established at the time of these violations, the actions of Lykos and Palmer were objectively unreasonable.

74.     As a result of these violations by Defendants, Plaintiffs have suffered actual and compensatory damages for which they are entitled to recover, including but not limited to past and future pecuniary and non-pecuniary losses, and other relief to secure Plaintiffs' rights. Plaintiffs are also entitled to recover punitive damages from Lykos and Palmer individually, because Lykos and Palmer acted willfully, knowingly, and purposely, with the specific intent to deprive Plaintiffs of their First Amendment rights of free speech and association.

## VI.
## CAUSE OF ACTION AGAINST INDIVIDUAL DEFENDANTS LYKOS AND PALMER:
## Tortious Interference with a Contract and Prospective Relations

75.    Each and every allegation contained in the foregoing paragraphs is realleged as if fully rewritten herein.

76.    During the relevant time period, Plaintiffs were employed by Lone Star College and, as such, maintained an "at-will" contractual relationship with, and had a valid contract with Lone Star College.

77.    Individual Defendants Lykos and Palmer, by their words and conduct, willfully and intentionally interfered with Plaintiffs' contractual relations and prospective contractual relations with Plaintiffs' employer, Lone Star College.  This interference by Lykos and Palmer, individually, was the proximate cause of Plaintiffs' loss of employment with Lone Star College.

## VII.
## ATTORNEYS' FEES

78.    Each and every allegation contained in the foregoing paragraphs is realleged as if fully rewritten herein.

79.    Plaintiffs are entitled to recover attorneys' fees and costs for bringing this action pursuant to 42 U.S.C. § 1988.

## VIII.
## DAMAGES

80.    As a result of Defendants' conduct, Plaintiffs seeks relief which includes, but is not limited to: (1) declaratory relief; (2) injunctive relief; (3) damages for economic loss in the past and future; (4) damages for harm to their reputation and character in the past and future; (5) compensatory damages in the past and in the future, including but not limited to damages for

mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life; (6) damages for the infringement upon their First Amendment Rights; (7) punitive or exemplary damages; (8) costs, expert witness fees, and attorneys' fees;  and (9) pre-judgment and post-judgment interest as allowed by law.

81.     Additionally, since Individual Defendants Lykos and Palmer's actions were committed maliciously, willfully, and/or with reckless indifference to Plaintiffs' federally protected rights, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to deter Lykos and Palmer, individually, and others similarly situated, from such conduct in the future.

## IX.
## JURY DEMAND

82.     Plaintiffs request a trial by jury on issues triable by a jury in this case.

## X.
## PRAYER

83.     WHEREFORE, Plaintiffs respectfully pray that upon final hearing and trial hereof of Plaintiffs' First Amendment claims, this Court grant Plaintiffs judgment for the following:

   a.     A declaration that the acts and practices complained of in this Complaint are violations of the First Amendment of the United States Constitution;

   b.     A permanent injunction enjoining Defendant Harris County, Texas, Defendant Pat Lykos, in her individual and official capacity as District Attorney, and Defendant Rachel Palmer, in her individual and official capacity as Assistant District Attorney, their agents, and those acting in concert with them, from engaging in any retaliation against Culbertson

and Wong for exercising their right to free speech and free association, as guaranteed by the First Amendment to the United States Constitution, and for filing this civil action;

c.   Actual damages for the period of time provided by law, including damages for economic loss in the past and future;

d.   Compensatory damages, including damages for mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life;

e.   Exemplary damages from Lykos and Palmer in their individual capacities;

f.   Attorneys' fees and expert witness fees both for this cause and for any and all appeals as may be necessary;

g.   Pre-judgment and post-judgment interest as allowed by law;

h.   Costs of court and other costs of prosecuting Plaintiff's claim; and

i.   Such other relief, legal or equitable, as may be warranted or to which Plaintiff is entitled.

21

Respectfully Submitted,

By:      /s/ R. Scott Cook

_____

Russell Scott Cook, Attorney-in-Charge
State Bar No. 24040724
Southern District Bar No. 557456
Russell Louis Cook, Jr.
State Bar No. 04756500
Southern District Bar No. 3000
The Cook Law Firm, Of Counsel
919 Congress Avenue, Suite 1145
Austin, Texas 78701
Telephone: (512) 482-9556
Telecopier: (512) 597-3172

ATTORNEYS FOR PLAINTIFFS
AMANDA   CULBERTSON   and   JORGE
WONG