| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

| | | |
|---|---|---|
| Amanda Culbertson, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| *versus* | § § | Civil Action H-12-3644 |
| Pat Lykos, *et al.*, | § § § | |
| Defendants. | § | |

## Opinion on Dismissal

1. *Introduction.*

   The State of Texas has a law to minimize unprincipled lawsuits based on a person's public discussion of pubic matters. It requires a court to dismiss those suits unless the initial pleading and a quick, short hearing evinces with clear and specific facts that convince the court of its factual and legal merit. The plaintiffs have several theories of liability for indirect injury arising from a decision of a county that was predicated on the lobbying of the district attorney. They did not meet the screening statute's standard, and if they had, their factual and legal premises are insufficient.

2. *Background.*

   Out of respect for its state, the court entered the order within the state-mandated deadline, whether it had to or not.

   In December of 2006, Amanda Culbertson began working for the Houston Police Department as a toxicologist with the grade of criminalist specialist in its laboratory. After the Texas Department of Public Safety certified her, she became a technical supervisor for the City's breath-alcohol testing.

   In 2008, Houston started using instrument vans to test breath-alcohol levels. By 2009, Culbertson says that she noticed that the vans occasionally had temperature and electrical

abnormalities. She thought that those things could affect the test's accuracy. Also that year, the City hired Jorge Wong as a technical supervisor for the laboratory.

During 2010 and 2011, Wong and Culbertson told their supervisors about the problems and tried to fix them. In March of 2011, Wong resigned from the City and began working for Lone Star College as a technical supervisor; it had a contract to supervise breath-alcohol testing for the Harris County Sheriff as well as other governmental agencies.

In May of 2011, Culbertson also resigned and joined Lone Star as a technical supervisor. Because the City no longer had technical supervisors, the district attorney continued using Culbertson as a witness in breath-alcohol cases. At the end of May, Culbertson testified that she could not verify that an instrument had been working on the day of the test.

In another case in July, the defendant subpoenaed Culbertson; she testified that she had quit because she did not trust the veracity of the van tests. That same month, Rachel Palmer – an assistant district attorney in charge of misdemeanors – wrote to a supervisor, concluding that Culberston could not be trusted to testify fairly in breath-testing cases.

Parenthetically, in Texas the county judge is the head of a county's administration, policy and execution. Reflecting the job's origin as a Spanish *alcade*, he has residual, minor judicial responsibilities; these are not implicated in this action. He chairs the county commissioners court – the chief policy body – and works with the independently elected sheriff, treasurer, district clerk, county clerk, and tax assessor-collector. All of the county officers work with him and each other and the district attorney.

Also, the district attorney is an official of the state of Texas who is elected from Harris County to serve in it. Her offices and staff are supplied through the commissioners court. The Texas Department of Public Safety is, naturally, an agency of the state itself. It supervises and operates crime laboratories.

3.  *The College's Contract.*

Because Lone Star's one-year contract with the County was to expire at the end of September, it asked the County to discuss its renewal in July. At the end of August, the district attorney's staff talked to the Department of Public Safety about its supervising the County's breath-alcohol testing; Pat Lykos, the district attorney, recommended that the County hire Public Safety rather than renew its contract with Lone Star. In early September, representatives from the county judge, County purchasing, district attorney, sheriff, and Public Safety met about its proposal.

In September, the staffs of Public Safety, purchasing, county judge, and district attorney exchanged comments on the draft contract. On September 13, the Commissioners Court met publicly. Several criminal-defense lawyers spoke for renewal with the College. They said that renewal was in jeopardy only because the district attorney wanted to retaliate against Culbertson and Wong. The commissioners postponed the decision while the County negotiated with Texas.

In the middle of September, Public Safety sent the County a signed contract. After the sheriff and the district attorney concurred, the County put it on the court's agenda for a vote on September 27th. That meeting was rescheduled for October 4th. Public Safety agreed to start in October without a contract. On September 28th, Public Safety began supervising most of the breath-testing; two days later, the County's contract with the College expired. On October 4th, the commissioners approved the contract with Texas. At the end of October, Culbertson and Wong were fired by the College.

4. *Public Participation.*

The Texas Citizens Participation Act imposes high standards for data and specificity in the pleadings for a suit claiming injuries from a public discussion of public politics. Although they are governmental officers, the law covers Lykos and Palmer as individuals. It requires prompt dismissal of Culbertson's and Wong's claim that Lykos and Palmer illegally interfered with their employment.

The hiring of a technical supervisor for the breath-alcohol testing for evidence in criminal cases is a matter of public concern under the Act.[1] "Person" includes government officials or employees. Culbertson and Wong assert that: Lykos and Palmer recommended non-renewal of the contract, the County concurred, and they were fired by the College; therefore, the defendants caused the loss of their jobs. They are necessarily suing Lykos and Palmer for their opinions on a governmental issue expressed publicly.[2]

The Act applies, and under it Culbertson and Wong must have shown in their complaint by clear and specific evidence that they were fired from the College as a direct consequence of an illegal act of the defendants. They have not identified a specific statement that clearly provoked the firings. They do not say what the defendants said to Lone Star about

---

[1] Tex. Civ. Prac. & Rem. Code § 27.001(3) & 27.002 (2012).

[2] Tex. Civ. Prac. & Rem. Code § 27.002 & 27.003.

them or anything else. They repeat remarks from the press, County meetings, and trials. One could infer that telling the College's largest customer not to renew and the County not renewing may have had an effect on its need for staff. Three levels of official discussions and decisions about the public's business affected other people. That is axiomatic not actionable. Under the act about public participation, the plaintiffs' claims will be dismissed. Other defects are covered later, and they would apply to the analysis under the act.

5.  *Interference.*

If the Citizens Participation Act did not cover Lykos and Palmer, Culbertson's and Wong's claims would have to be dismissed. Their evidence, taken as true, shows no interference – none to support an action.

Two at-will workers at a regional college were released. Temporally, the firing followed the expiration of a contract between Lone Star College and Harris County. The lapse followed a decision by the County's policy board; its decision came after negotiations among officers from the county, college, and state. The negotiations were probably provoked by the officials' unhappiness with the College's workers. The plaintiffs' picture all of the actors "rubber stamping" Lykos's wishes is unsupported. Had they automatically followed her counsel, they are still deciding for themselves. If the College and County had heard a talk-show host's program and if, in response to it, they had fired two workers and cancelled a lease, those institutions are responsible for their deeds – not the late-night slick.

Whatever interest the workers may have in jobs without tenure supported by a contract with an expiration date, they have no plausible causal chain. Both the Commissioners Court and the College were independent actors who could have decided differently. The plaintiffs did not appear before the commissioners court to argue for renewal. The prosecutors did not cause the lay-offs. The firings may have been an indirect consequence of the end of the County's contract, but the College's firing was itself not legally impermissible, so urging that it be done cannot be legally impermissible.

6.  *Actionable Words.*

At law, some forms of expression may not be used as a predicate for a private legal action; this is called being privileged. Palmer's and Lykos's words are privileged. The district attorney has the duty to collect reliable evidence to prosecute crimes. Both of them have a duty to work with the commissioners and sheriff as they think is in the public interest. If Palmer had

not been embarrassed by Culbertson's testimony, she might not have put as much energy into her critique of the College's work under the County contract as she did, but what she was doing was meeting her public responsibilities. If she had a private grievance, it was directly derived from and related to her work. That makes it exempt from private claims of slander or contractual interference. Because their statements to the County were privileged, Culbertson and Wong also cannot show an independent wrong in the defendants' talk – this claim collapses. A legally recognized wrong is a prerequisite to a claim that the defendant' interfered with their prospective business relations.[3] They, of course, would have the same problems with causation here as in the other claims.

7. *Free Speech.*

Culbertson and Wong say that they were punished by a governmental unit because they publicly discussed the van problems. If Lykos and Palmer lobbied against renewal of the Lone-Star contract, their lobbying is just as protected by the Constitution as was the lobbying by Culbertson and Wong. Changing or not changing a public policy will have secondary and tertiary consequences – contractual, financial, and personal. Having advocated a policy is not grounds for a lawsuit.

8. *Technicalities.*

The plaintiffs may not sue Palmer and Lykos in their official capacities because they elected the remedy for those claims when they sued the County on them.

They may not sue Lykos and Palmer individually; a private citizen cannot suppress another's speech as the government. If you speak in public, and because of what you said, your non-governmental neighbor tosses a potted plant through your picture window, you have a trespass action for the damage to your window, not a free expression claim.

No facts show that the County had a policy of retaliating against people with whom it disagreed. It seldom adopts an express formal policy instructing its subsidiary agencies to violate the law, but the plaintiffs expand their interpretation of an episode in their lives into a universal policy.

---

[3] Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711 (Tex. 2001).

9.  *Conclusion.*

If the Port of Houston bans cruise ships because of your protests, the longshoreman who has no work as a consequence cannot sue you. Similarly, you are not immune from natural consequences of your free speaking, especially if it affects people's impression of your abilities, including reliability. Lykos and Palmer were obliged as public servants to recommend a supervisor for the alcohol testing. Neither had the power to interfere with Culbertson's and Wong's employment at Lone Star College.

This tortification of politics and related public administration fails.

Signed on September 11, 2013, at Houston, Texas.

Lynn N. Hughes
United States District Judge